IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JACK DHILLON,                              )    Civil No.: 3:11-cv-01269-JE
                                           )
                       Plaintiff,          )    FINDINGS AND
                                           )    RECOMMENDATION
          v.                               )
                                           )
MICHAEL J. ASTRUE,                         )
Commissioner of Social Security,           )
                                           )
                       Defendant.          )
_____   )

          Bruce W. Brewer
          Law Offices of Bruce W. Brewer, PC
          419 Fifth Street
          Oregon City, OR 97045

                  Attorney for Plaintiff


          S. Amanda Marshall, U.S. Attorney
          Adrian L. Brown, Asst. U.S. Attorney
          1000 S.W. 3rd Avenue, Suite 600
          Portland, OR 97204-2902


FINDINGS AND RECOMMENDATION - 1

Jeffrey R. McClain
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

JELDERKS, Magistrate Judge:

      Plaintiff Jack Dhillon brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his applications for Disability Income Benefits (DIB) and Supplemental Security Income (SSI) under the Social Security Act (the Act).  Plaintiff seeks an Order remanding the action to the Social Security Administration (the Agency) for an award of benefits.

      For the reasons set out below, the Commissioner's decision should be reversed and this case should be remanded to the Agency for an award of benefits.

## Procedural Background

      Plaintiff filed applications for DIB and SSI on May 4, 2007, alleging that he had been disabled since December 1, 2005.  After his claims had been denied initially on August 1, 2007 and upon reconsideration on November 23, 2007,  Plaintiff timely requested an administrative hearing.

      On November 30, 2009, a hearing was held before Administrative Law Judge (ALJ) Richard Say.   Plaintiff and Gary Jeskie,  a Vocational Expert (VE), testified at the hearing.

      In a decision filed on December 17, 2009, ALJ Say found that Plaintiff was not disabled within the meaning of the Act.  On June 27, 2010, while his request for review of that decision was pending, Plaintiff submitted to the Appeals Council a residual functional capacity assessment dated June 3, 2010, prepared by his treating physician, and cervical and lumbar spine

FINDINGS AND RECOMMENDATION - 2

MRIs dated June 27, 2010.  The Appeals Council considered this evidence, concluded that it was insufficient to set aside the decision of the ALJ, and denied Plaintiff's request for review on September 19, 2011.  Upon that denial, the decision of the ALJ became the final decision of the Commissioner.  In the present action, Plaintiff challenges that decision.

## Background

Plaintiff was born on June 12, 1950, and was 55 years old at the time of the alleged onset of his disability.  He has a high school education and has past relevant work as a small engine mechanic.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One.  The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA).  A claimant engaged in such activity is not disabled.  If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two.  20 C.F.R. § 404.1520(b).

Step Two.  The Commissioner determines whether the claimant has one or more severe impairments.  A claimant who does not have such an impairment is not disabled.  If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step Three.  20 C.F.R. § 404.1520(c).

Step Three.  Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the

presumptively disabling impairments listed in the Social Security Administration (SSA) regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has such an impairment is disabled. If the claimant's impairment does not meet or equal an impairment listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

Step Four. The Commissioner determines whether the claimant is able to perform relevant work he or she has done in the past. A claimant who can perform past relevant work is not disabled. If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five. 20 C.F.R. § 404.1520(e).

Step Five. The Commissioner determines whether the claimant is able to do any other work. A claimant who cannot perform other work is disabled. If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do. The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled. If the Commissioner does not meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(f)(1).

At Steps One through Four, the burden of proof is on the claimant. Tackett, 180 F.3d at 1098. At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. Id.

FINDINGS AND RECOMMENDATION - 4

**Medical Record**

Like the parties, I will not summarize the medical record separately, and discuss the

relevant medical evidence only in the context of Plaintiff's arguments.

**Testimony**

**Plaintiff**

Plaintiff testified as follows at the hearing before the ALJ.

Plaintiff is 5'10" tall and weighs 330 to 340 pounds.  He cannot work because of pain

related to a back injury he sustained while working in 1998.  In addition to constant back pain,

Plaintiff suffers from sleep apnea and severe asthma.

Plaintiff can dress himself, cook, do laundry once per month, drive a car, and go

shopping.  He spends most of his day in a recliner with his feet up.  He watches television and

"tinkers" with small electronic devices, which he sometimes repairs and sells.  Plaintiff can walk

up to one half a block at a time, and sometimes mows his landlord's yard, working a little at a

time, to help pay his rent.  He can sit one hour and stand for 15 minutes at a time, and can lift up

to 10 or 15 pounds.

Plaintiff's legs, arms, and hands go numb, and he sometimes drops objects because of

numbness.  Plaintiff lacked the money needed to perform additional tests that his doctor wanted

to have performed to better understand the source of his pain and limitations.

**Lay Witness Testimony**

Linda Dhillon, Plaintiff's wife, submitted a third party "function report" to the Agency

describing Plaintiff's activities as follows.

Plaintiff could not walk for long periods and could sit for long periods only if he used a

recliner.  He could not drive for long periods without pain.  Plaintiff was able to shower, but

could not dry all areas of his body because of pain, spasms, and balance problems.  His ability to do yard work and housework was limited because of pain, and he would suffer for several days if he performed these activities.  Plaintiff went shopping every few days, but shopped for only about 10 minutes.  He used to fish, shoot, and hike, but was now limited to watching television because of pain and fatigue.  Plaintiff did not participate in social activities because he was fatigued and did not feel well.  His ability to stand, sit, bend, squat, and reach was severely limited by pain, and he could walk only about one half of a block. Pain limited  Plaintiff's ability to concentrate.

## **VE**

Gary Jeskie, a VE, testified that Plaintiff's past relevant work as a small engine mechanic was listed as medium exertional level skilled work in the Dictionary of Occupational Titles (DOT), but was heavy to very heavy as it had been  performed by Plaintiff.  The ALJ posed a vocational hypothetical describing an individual of Plaintiff's age, education, and experience who could perform medium exertional level work, and was limited to only occasional stooping, crouching, crawling, kneeling, and climbing, and needed to avoid concentrated exposure to dust, fumes, gasses, and any other kind of pulmonary irritant.  The VE testified that the individual described could perform Plaintiff's past relevant work as a small engine mechanic as that work was generally performed.  In response to questioning by Plaintiff's counsel, the VE testified that an individual who missed work four times a month could not sustain competitive employment.

## **ALJ's Decision**

At the first step of his disability analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of his disability.

At the second step, the ALJ found that Plaintiff's degenerative disc disease, obesity, and asthma were severe impairments within the meaning of 20 C.F.R. §§ 404.1520(c); 416.920(c).

At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment in the "listings," 20 C.F.R. Part 404, Subpart P., App.1.

The ALJ next assessed Plaintiff's residual functional capacity (RFC). He found that Plaintiff retained the capacity required to perform medium exertional level work subject to the following limitations: He could only occasionally stoop, crouch, crawl, kneel, and climb, and needed to avoid concentrated exposure to dust, fumes, gasses, and any other kind of pulmonary irritant. The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent they were inconsistent with this assessment.

Based upon the testimony of the VE, at the fourth step, the ALJ found that Plaintiff could perform his past relevant work as a small engine mechanic as that job was generally performed. Accordingly, he found that Plaintiff was not disabled within the meaning of the Act.

### Standard of Review

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Claimants bear the initial burden of establishing disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record, DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991), and bears the burden of establishing that a claimant can perform "other work" at Step Five of the

disability analysis process.  Tackett, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039.  The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation."  Andrews, 53 F.3d at 1039-40.

## Discussion

Plaintiff contends that the ALJ improperly rejected the opinions of his treating physician, failed to adequately support his conclusion that he was not wholly credible, improperly rejected statements of a lay witness, and failed to properly assess his obesity impairment.  He also asserts that the Appeals Council erred in rejecting a residual functional capacity assessment prepared by his treating physician which Plaintiff submitted while his request for review was pending.

### 1. Rejection of Opinions of Plaintiff's Treating Physician

Dr. Kim Craft treated Plaintiff four times between December, 2007 and October, 2009. In his notes of a visit in December, 2007, Dr. Craft indicated that Plaintiff had severe problems with arthritis, and opined that Plaintiff had a "severe disability" and was "unable to do meaningful work consistently."  He added that he wanted Plaintiff to return for further evaluation after obtaining x-rays and test results.  In the notes of other visits, Dr. Craft noted that further studies had not been conducted because Plaintiff did not have the necessary funds.

FINDINGS AND RECOMMENDATION - 8

Dr. Craft prepared two evaluations of Plaintiff's residual functional capacity.  In the first of these, which was available for the ALJ's consideration, Dr. Craft indicated that Plaintiff had degenerative joint disease in his lumbar and cervical spine and opined that his prognosis was poor.  He indicated that Plaintiff could frequently lift less than 10 pounds, could occasionally lift 10 pounds, and could never lift 20 pounds or more.  Dr. Craft opined that, during an 8 hour work day, Plaintiff could sit for 15 minutes at a time for a total of 2 hours; could stand for 15 minutes at a time for a total of 2 hours; would require a 5 minute break every 15 minutes.  He opined that Plaintiff had significant limitations in his ability to reach, grasp, and manipulate objects with either hand, and could walk less than 1 block without resting, and opined that Plaintiff's symptoms would frequently interfere with the concentration and attention required to perform simple tasks.  Dr. Craft  stated that Plaintiff was not a malingerer, and opined that Plaintiff's symptoms would cause him to miss work more than 4 times per month.

Dr. Craft largely reiterated these opinions in a residual functional capacity assessment dated June 3, 2010, which  Plaintiff submitted to the Appeals Council while his request for review of the ALJ's adverse decision was pending.  Plaintiff also submitted to the Appeals Council the results of MRIs which were taken in June, 2010, more than six months after the ALJ had issued his adverse decision.

Plaintiff contends that the ALJ erred in rejecting Dr. Craft's opinion, and that the Appeals Council erred in failing to conclude that the RFC assessment provided while Plaintiff's request for reconsideration was pending established that Plaintiff is disabled.

**Evaluating Medical Opinion**

Because treating physicians have a greater opportunity to know and observe their patients, their opinions are given greater weight than the opinions of other physicians.

FINDINGS AND RECOMMENDATION - 9

Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989). An ALJ must provide clear and convincing reasons for rejecting a treating physician's uncontroverted opinions, Lester v. Chater, 81 F.2d 821, 830-31 (9th Cir. 1995), and must provide "specific, legitimate reasons . . . based upon substantial evidence in the record" for rejecting opinions of a treating physician which are contradicted. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citations omitted).

The opinion of an examining physician is entitled to greater weight than the opinion of a non-examining physician. Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990). An ALJ must provide clear and convincing reasons for rejecting the uncontradicted opinions of an examining physician, id., and must provide specific and legitimate reasons for rejecting opinions of an examining physician that are contradicted by another physician. Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).

**Analysis**

The Commissioner does not dispute Plaintiff's assertion that, given his age, education, relevant work experience, and lack of transferable skills, Plaintiff is disabled according to the "grids" if he cannot perform medium exertional level work. This requires the ability to stand six hours, lift/carry up to 50 pounds, and frequently lift/carry up to 25 pounds. C.F.R. §1567(c). The Commissioner likewise does not dispute that, as the VE testified, an individual whose impairments cause absences from work four days per month cannot sustain employment. Accordingly, there is no question that, if Dr. Craft's opinions are accepted, a finding of disability is required.

Dr. Craft's opinions as to the severity of Plaintiff's symptoms and impairments were contradicted by Dr. Webster, an examining physician whose opinions the ALJ credited.

Therefore, the ALJ was required to provide specific and legitimate reasons, which were supported by the record, for rejecting Dr. Craft's opinions.  See Magallanes, 881 F.2d at 751.

The ALJ rejected Dr. Craft's opinions on the grounds that Dr. Craft had seen Plaintiff only four times over the course of 2 years, his records did not include "objective evidence" supporting his diagnoses or the limitations he assessed, and he appeared to have assessed Plaintiff's residual functional capacity in part based upon "answers provided by claimant himself . . . ."

These are not adequate grounds to reject Dr. Craft's opinions.  Though Plaintiff visited Dr. Craft only four times over a two year period, there is no question that he was engaged to treat Plaintiff, and therefore qualified as a "treating physician."  See, e.g., Srague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)(doctor "employed to cure" is  "treating physician").  From a review of Dr. Craft's detailed  medical records, there is little doubt that this treating physician spent significantly more time with Plaintiff than the 25 minutes Plaintiff spent with Dr. Webster, the examining physician whose opinion the ALJ preferred.  Though Dr. Craft did suggest that additional testing should be done, there is no basis for concluding that he did not rely on "objective evidence" in forming his diagnoses and opinions as to Plaintiff's functional limitations.  That Dr. Craft may have asked Plaintiff for some information when he assessed his functional limitations is not a basis for discounting his opinion as to Plaintiff's functional capacity.  Though the record does not indicate what information Plaintiff provided, it is not remarkable that a treating physician might seek information from a patient in assessing functional capacity, and there is no basis for concluding that Dr. Craft simply accepted information Plaintiff supplied without applying his independent professional analysis.  Dr. Craft's records indicate that he tested Plaintiff's grip strength, reflexes, and strength in the lower

extremities, and noted deficits which the ALJ indicated were "adequately supported by the medical evidence in the record."  The ALJ provided no reasonable basis for accepting Dr. Webster's opinion that Plaintiff's grip strength was fully intact while rejecting Dr. Craft's observation that his grip strength was reduced.  In addition, both Dr. Craft and Dr. Webster noted a significant loss of reflexes in Plaintiff's lower extremities, a symptom which, without explanation, the ALJ concluded was not supported by the medical record.

Where, as here, an ALJ fails to provide adequate reasons for rejecting the opinion of a treating physician, the opinion is credited as a matter law.  Lester, 81 F.3d at 834.  Remand for an award of benefits is then appropriate if the record is fully developed, and it is clear that a finding of disability would be required if the improperly rejected evidence were accepted. Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).  Here, remand for an award of benefits is appropriate because the record is fully developed and a finding is disability is required if Dr. Craft's opinion is accepted.  In the absence of adequate reasons for rejecting Dr. Crafts' opinion, the ALJ's conclusion that Plaintiff could perform the medium exertional level work, upon which a finding of non-disability depended, lacked substantial support.

2. **Assessment of Plaintiff's Credibility**

**Assessment of a Claimant's Testimony**

The ALJ is responsible for determining credibility, resolving conflicts in medical evidence, and resolving ambiguities.  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  If a claimant produces medical evidence of an underlying impairment that is reasonably expected

to produce some degree of the symptoms alleged, and there is no affirmative evidence of malingering, an ALJ must provide "clear and convincing reasons" for an adverse credibility determination.  Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006).  If substantial evidence supports the ALJ's credibility determination, that determination must be upheld, even if some of the reasons cited by the ALJ are not correct.  Carmickle v. Commissioner of Social Security, 533 F.3d 1155, 1162 (9th Cir. 2008).

The ALJ must examine the entire record and consider several factors, including the claimant's daily activities, medications taken and their effectiveness, treatment other than medication, measures other than treatment used to relieve pain or other symptoms, and "any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms."  SSR 96-7.

**Analysis**

The ALJ found that Plaintiff had established the existence of a medically determinable impairment capable of producing his symptoms, but that his description of his symptoms and limitations was not credible to the extent it was inconsistent with the ALJ's RFC analysis. Plaintiff contends that the ALJ did not provide the required support for his adverse credibility determination.

In support of his credibility determination, the ALJ cited evidence that Plaintiff had "exhibited poor effort in his consultative examination in July 2007," had testified to symptoms that were "disproportionate to the objective and clinical findings," either exaggerated or was at the least "not a reliable historian," had followed a conservative course of treatment and had not sought consistent medical treatment despite complaints of persistent pain, failed to follow

medical advice that he lose weight, and engaged in activities of daily living that were inconsistent with the level of impairment to which he testified.  The ALJ also asserted that Plaintiff's allegations of weakness in the lower extremities were never confirmed upon medical examination.

Though he criticized the "poor effort" that the examining doctor reported, the ALJ did not assert that there was evidence of malingering, or dispute Dr. Craft's assertion that Plaintiff was not a malingerer. The ALJ was therefore required to provide clear and convincing reasons supporting his finding that Plaintiff was not wholly credible.

The reasons supporting the ALJ's credibility determination do not meet that standard. The ALJ's assertion that Plaintiff exaggerated his limitations in alleging an inability to do "all basic work activity" does not accurately describe Plaintiff's testimony: Basic work activity includes walking, sitting, standing, hearing and seeing, and though Plaintiff testified that he was significantly impaired, he did not deny his ability to perform these activities at limited levels. See 20 C.F.R. §§ 404.1521(a), (b); 416.921(a),(b).  Plaintiff neither testified that he could not perform these activities at all, nor is it necessary to show an inability to perform all "work activity" to establish disability. Instead, Plaintiff asserted that he was severely  impaired–an assertion supported by his treating physician's RFC assessments.  The ALJ's assertion that Plaintiff was not credible because his symptoms were "disproportionate" to the objective medical evidence is not supported by the record, and is inconsistent with Ninth Circuit decisions holding that where, as here, medical evidence establishes the existence of an impairment reasonably expected to produce some symptoms, an ALJ cannot reject a claimant's testimony on the grounds that the degree of symptoms alleged is not fully supported by objective medical evidence.  E.g., Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986).  Excess symptoms are, by

definition, "disproportionate" to the degree of symptoms expected from a given impairment.  In any event, the objective medical evidence of significant impairment included diagnoses of significant disc degeneration, disease of the spine and knees, nerve impairment shown by testing by the consultative examiner and Plaintiff's treating physician, other objectively verified limitations assessed by Plaintiff's treating physician, and morbid obesity that could be expected to significantly restrict Plaintiff's ability to stand and walk.  Under these circumstances, any disparity between the objective medical evidence and Plaintiff's allegations was not as great as the ALJ implied.

The ALJ's assertion that Plaintiff's activities of daily living were inconsistent with the degree of impairment Plaintiff alleged is not supported by the record.  The ALJ correctly noted that Plaintiff testified that he did his own cooking, housework, laundry, and shopping, cared for his personal hygiene without assistance, drove a car, watched television, read the paper, visited his friends, occasionally mowed the lawn where he lived, and liked to "tinker" with electronic devices.  However, his description of Plaintiff's activities of daily living as "extensive" does not characterize the evidence: The record does not support the conclusion that Plaintiff was able to carry out the daily activities cited by the ALJ in a manner that was inconsistent with Plaintiff's allegations of severe limitations or that was consistent with the ALJ's conclusion that he could regularly perform medium level work.  Instead, the evidence supported the conclusion that Plaintiff performed the cited activities sporadically and briefly, interspersed with long periods of rest, and there is no evidence that these activities were "transferable" to a work setting.

The ALJ cited Plaintiff's failure to more aggressively treat with narcotic pain medications, physical and occupational therapy, surgery, and frequent visits to physicians as evidence that his symptoms were not as severe as alleged.  He also asserted that there was no

evidence that Plaintiff had "exhausted the low income resources available in his community." These are not a clear and convincing reason for discounting Plaintiff's allegations of severe pain and impairment.  A claimant's failure to follow prescribed treatment is justifiable if he lacks the necessary funds.  SSR 96-7p; Regennitter v. Commissioner, 166 F.3d 1294, 1296 (9th Cir. 1999). Plaintiff's assertion that he lacked medical insurance or the  funds needed for treatment, medication, and additional testing is uncontradicted, and is supported by notes in the medical record.  The record includes no evidence that Plaintiff unreasonably failed to seek any free medical care that was available, and the ALJ made no findings as to the existence of such resources.

The ALJ's assertion that Plaintiff's failure to follow doctor's advice that he lose weight undermines Plaintiff's credibility is not persuasive.  As Plaintiff correctly notes, relevant Agency regulations preclude an ALJ from considering the effect of failure to follow treatment for obesity unless the claimant has been found to be disabled at least in part because of obesity.  SSR 02-1p; Orn v. Astrue, 495 F.3d 625, 633-37 (9th Cir. 2007).  In addition,  the Ninth Circuit has concluded that an obese claimant's failure to lose weight is relevant only if there is clear and convincing evidence that a prescribed weight loss treatment would be effective, and has observed that "failure to follow treatment for obesity tells us little or nothing about a claimant's credibility."  Id. at 637.  Though he was advised to lose weight, there is no evidence that a formal treatment plan was prescribed, and no evidence that any such plan would have been effective.  Under these circumstances, Plaintiff's failure to lose weight could not be considered as evidence that he was not wholly credible.

The ALJ's assertion that no weakness in the lower extremities was ever noted during Plaintiff's "infrequent medical visits" is contradicted by the records of Dr. Craft, Plaintiff's treating physician, who noted such weakness.

This leaves only the ALJ's reference to the "poor effort" to which Dr. Webster opined in the report of his examination.  Without much more, and in the light of substantial evidence supporting the conclusion that Plaintiff is significantly impaired, that opinion is not a sufficient basis for concluding that Plaintiff was not credible.

As noted above, this action should be remanded for an award of benefits based upon the ALJ's failure to properly credit the opinions of Plaintiff's treating physician.  The lack of adequate support for the adverse credibility finding is an additional reason to remand this action for an award of benefits.  See, e.g., Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995) (remand for award of benefits appropriate if claimant's improperly rejected testimony would establish disability if accepted).

My conclusion that this action should be remanded for an award of benefits for the reasons discussed above makes it unnecessary to reach the other issues Plaintiff has raised. Nevertheless, in order to create a full record for any further review, I will briefly address the balance of Plaintiff's arguments.

3. **Rejection of Lay Witness Testimony**

As noted above, Plaintiff's wife submitted a third party witness statement describing Plaintiff's activities and limitations.  The ALJ noted that there was "no reason to doubt her observations of the behaviors [Plaintiff] demonstrates," and found that she was "generally credible."  Notwithstanding his apparent acceptance of the veracity of Ms. Dhillon's

observations, he concluded that her observations were of "limited value" because "she does not have medical and/or vocational expertise . . . ."

I have reviewed a number of decisions in which an ALJ has discredited a third party witness's observations based upon the lack of medical and/or vocational expertise. This is not a legitimate basis on which to discredit third-party statements. Lay testimony describing a claimant's apparent symptoms and activities is competent evidence which must be considered, e.g., Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012) (citing Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1995)), and an ALJ must provide "germane" reasons for rejecting such evidence. Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).

The ALJ erred in rejecting Ms. Dhillon's testimony because she lacked medical or vocational expertise. By definition, all "lay" testimony is given by witnesses who are not "expert," and ALJs are required to consider evidence from witnesses who are not expert medical sources. See 20 C.F.R. § 404.1513(e)(2).

The Commissioner notes that any error in evaluating lay witness testimony is harmless if that testimony "is contradicted by more reliable medical evidence that the ALJ credited." Molina v. Astrue, 674 F.3d 1104, 1118-19 (9th Cir. 2012). Here, the ALJ's error was not harmless because, as discussed above, the ALJ did not adequately support his rejection of a treating physician whose opinion was consistent with Ms. Dhillon's testimony.

## 4. **Assessment of Plaintiff's Obesity**

Plaintiff weighed between 330 and 340 pounds at the time of the hearing, and the ALJ found that Plaintiff's obesity was a "severe" impairment within the meaning of relevant regulations. The ALJ asserted that he had considered whether this impairment, combined with Plaintiff's other impairments, met or equaled a presumptively disabling impairment in the

FINDINGS AND RECOMMENDATION - 18

"listings."  In explaining this conclusion that it did not, he simply stated that, because there is no separate listing for obesity, he "included the factor of the claimant's obesity in the assessment of the claimant's other impairments and their relationships to the requirements of the Listings."

Plaintiff contends that the ALJ's analysis and explanation of the effects of his obesity did not satisfy the requirements at step three, and that the ALJ erred in failing to adequately account for his obesity in his assessment of Plaintiff's residual functional capacity.  He argues that his need for "substantial daily recumbency," caused by the combined effects of his obesity and other impairments, equals "several listings including 1.04 . . . ."

Though this action should be remanded for an award of benefits for other reasons discussed above, I disagree with these contentions.  Unless a claimant has presented evidence supporting a finding of equivalence, an ALJ is not required to discuss the combined effects of a claimant's impairments or expressly compare those impairments to any particular listed impairment.  Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005).  Here, Plaintiff did not provide such evidence to either the ALJ or the Appeals Council.  Though he now asserts that obesity combined with other impairments requires him to spend much of his day in a recliner, he did not testify that obesity was a source of this limitation.  Under these circumstances, the ALJ's explanation of his analysis of the effects of Plaintiff's obesity was sufficient.

## Conclusion

A judgment should be entered REVERSING the decision of the Commissioner and REMANDING this action to the Agency for an award of benefits.

## Scheduling Order

FINDINGS AND RECOMMENDATION - 19

This Findings and Recommendation will be referred to a district judge.  Objections, if any, are due February 19, 2013.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 30th day of January, 2013.


       /s/ John Jelderks
John Jelderks
U.S. Magistrate Judge

FINDINGS AND RECOMMENDATION - 20